IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GASTRONOMICAL WORKERS UNION
LOCAL 610, et al.,

    Plaintiffs,

    v.

POSADAS DE PUERTO RICO
ASSOCIATES, INC.
D/B/A WYNDHAM CONDADO PLAZA
HOTEL & CASINO,

    Defendant.

CIVIL NO. 06-1422 (RLA)

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiffs, the Gastronomical Workers Union Local 610 and Metropolitan Hotel Association Pension Fund ("Pension Fund") and the Gastronomical Workers Union Local 610 and Metropolitan Hotel Association Health & Welfare Fund ("Health Fund") (collectively "the Funds") and their respective Trustees have moved the Court to enter summary judgment against defendant, Posadas de Puerto Rico Associates, Inc. d/b/a Wyndham Condado Plaza ("Condado Plaza") seeking payment of contributions allegedly due to the Funds. The Court having considered the arguments of the parties as well as the evidence submitted in support thereof finds that movants are entitled to relief as requested.

### THE FACTS[1]

1. The Funds are jointly administered multiemployer employee benefit plans as defined in Sections 3(3) and 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(3) and (37).

2. Plaintiffs Edgar Romney, David Cardona, Maria Fernandez and Dora Soler are Trustees of the Pension Fund. Plaintiffs Edgar Romney and David Cardona are Trustees of the Health Fund. The above-listed Trustees are fiduciaries of the Funds as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

3. At the time this lawsuit commenced and at all times pertinent to this action, defendant Condado Plaza and the Gastronomical Workers Union Local 610 (the "Union") have been parties to collective bargaining agreements ("CBA's") under which Condado Plaza bore an obligation to make contributions to the Funds on behalf of individuals who were employed by Condado Plaza and covered by the CBA's.

4. On or about December 5, 1997, Condado Plaza and the Union entered into a CBA commencing September 1, 1997 and ending August 31, 2000, and continuing thereafter for successive one-year periods.

---

[1] Defendant's objections to the facts as proffered by plaintiffs have been rejected by the court and have been addressed together with the legal issues raised by Condado Plaza.

5. Pursuant to the CBA, Condado Plaza agreed to make monthly contributions to the Health Fund and the Pension Fund on behalf of employees covered under the CBA.

6. Pursuant to the CBA, Condado Plaza agreed to be bound by the Agreement and Declaration of Trust ("Trust Agreement") governing each Fund, as amended from time to time.

7. When the CBA expired on August 31, 2000, Condado Plaza and the Union entered into a Stipulation until the next CBA was finalized wherein Condado Plaza agreed to increase its monthly contributions to the Health Fund such that from January 1, 2001 through August 31, 2001, it would make contributions in the amount of $165.00 per employee and from September 1, 2001 through December 31, 2001, it would make contributions in the amount of $170.00 per employee.

8. Pursuant to the Stipulation, Condado Plaza agreed to increase its monthly contributions to the Pension Fund such that from January 1, 2001 through August 31, 2001, it would make contributions in the amount of $52.00 per month per employee, and from September 1, 2001 through December 31, 2001, it would make contributions in the amount of $54.00 per month per employee.

9. The Stipulation further provided that all clauses of the prior CBA, not altered by the Stipulation, would remain in effect.

**CIVIL NO. 06-1422 (RLA)**                                                              **Page 4**

10. On or about October 8, 2003, Condado Plaza and the Union entered into another CBA, effective from September 1, 2003 through August 31, 2006, and continuing thereafter for successive one-year periods.

11. In that CBA, Condado Plaza reaffirmed the contribution rates it had agreed to in the Stipulation and again agreed to continue to be bound by the Trust Agreement governing each Fund, as amended from time to time.

12. Under the CBAs, Condado Plaza was required to make its contributions to the Health Fund by the 10th day of the month for which the contributions are owed, and the Pension Fund by the 10th day of the following month for which work was performed for which contributions are owed.

13. The Amended and Restated Trust Agreement for the Pension Fund provides for the Pension Fund's authority to perform payroll audits of the Employers to determine whether or not the correct amount of contributions were made. It further provides that the Fund is entitled to the payroll audit fees and costs incurred to verify that contributions to the Fund are properly made.

14. The Amended and Restated Trust Agreement for the Health Fund provides for the Pension Fund's authority to perform payroll audits of the Employers to determine whether or not the correct amount of contributions were made. It further provides that the

Fund is entitled to the payroll audit fees and costs incurred to verify that contributions to the Fund are properly made.

15. Pursuant to their powers under the Trust Agreements, on or about March 10, 2004, the Boards of Trustees for both Funds adopted a Joint Policy for Collection of Delinquent Contributions ("Joint Policy"). The Joint Policy provides that contributions shall become delinquent twenty (20) calendar days after the date they are due. Section 2 ¶ 1. Further, each Fund shall have the right to recover interest, liquidated damages, attorneys' fees and costs from a delinquent employer. Section 6. Under the Joint Policy if contributions are not received within 20 days from the date they become due, interest shall accrue at a rate equal to the prime rate of the Funds' custodian bank on each January 1st plus two percent (2%). Section 6 ¶ 1(a). Liquidated damages are assessed at 20% of the delinquent contributions. Section 6 ¶ 1(b).

16. The Joint Policy also contains the Funds' Payroll Audit Policy, which provides that the employer shall pay the cost of the payroll audit, routine or otherwise, if the payroll audit results in a finding that the employer has underpaid, for any 12-month period, the greater of: (a) $5,000 or (b) 5% of the employer's annual contributions. Section 4 ¶ 7.

17. C.P.A. Jose Penabaz conducted an audit of Condado Plaza's payroll records on behalf of the Funds ("the Audit") in order to

     determine whether the appropriate contributions had been paid by Condado Plaza for the period from January 1, 2001 to December 31, 2001. The Audit was completed in May 2005.

18. The Audit revealed that for the period January 1, 2001 through December 31, 2001, Condado Plaza owed previously unreported contributions to the Pension Fund in the amount of $4,386.00 and owed previously unreported contributions to the Health Fund in the amount of $21,800.00.

19. For the period January 1, 2001 through December 31, 2001, Condado Plaza owed the Pension Fund $4,386.00 in delinquent contributions, interest (calculated through June 25, 2007) on those delinquent contributions in the amount of $1,997.22, and liquidated damages in the amount of $887.20.

20. For the period January 1, 2001 though December 31, 2001, Condado Plaza owed the Health Fund $21,800.00 in delinquent contributions, interest (calculated through June 25, 2007) on those delinquent contributions in the amount of $10,017.63, and liquidated damages in the amount of 44,360.00.

21. Because the Audit resulted in a finding that Condado Plaza underpaid the Pension Fund in the amount of $4,386.00, Condado Plaza is not liable to the Pension Fund for the cost of the Audit. However, since the Audit resulted in a finding that Condado Plaza underpaid the Health Fund in the amount of $21,800.00, and that amount is greater than $5,000.00 and 5% of

its 2001 contributions (2001 contributions - $327,780.00 x 5% = $16,289.00) Condado Plaza is liable to the Health Fund or the cost of the Audit as it pertains to the Health Fund.

22. The cost of the Audit to the Health Fund was $8,730.00.[2]

23. In addition, Condado Plaza failed to pay the Pension Fund the full amount of contributions owed for the months of October 2003 and August 2004 in the aggregate amount of $336.00. Therefore, Condado Plaza owes the Pension Fund $336.00 in delinquent contributions, $175.06 in interest and $67.50 in liquidated damages.

24. Condado Plaza also owes the Pension Fund interest in the amount of $287.76 as a result of failing to timely pay its May and June 2004 contributions.

25. Condado Plaza failed to pay the Health Fund the full amount of contributions owed for September 2005 and therefore, for that month, owes the Health Fund $380.00 in delinquent contributions, $62.00 in interest and $76.00 in liquidated damages.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P. sets forth the standard for ruling on motions for summary judgment. *See*, Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000). It is well settled, that in ruling on

---

[2] Defendant objects to this sum noting that the demand in the Complaint was for $15,175.00 and the pleading has not been amended. Given the invoice submitted by the accountant we find the amount claimed is correct.

**CIVIL NO. 06-1422 (RLA)** **Page 8**

a motion for summary judgment, the Court reviews the record in the light most favorable to non-movants and draws all reasonable inferences in their favor. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *See*, Fed. R. Civ. P. 56(c); Celotex Corp. v. Catred, 477 U.S. 317; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d at 841. A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

## THE AUDIT

Defendant denies owing the contributions identified in the Audit based on the doctrine of accord and satisfaction as well as plaintiff's failure to demand collection at an earlier date as per the collection procedure set forth in the Joint Policy.

"Discharge by accord and satisfaction occurs upon the rendering of some performance different from that which was claimed as due and the acceptance of such substitute performance by the claimant as full satisfaction. Alvarez Diaz v. Air France, 787 F.Supp. 258, 260 (D.P.R. 1991). In order for this doctrine to apply, the following

**CIVIL NO. 06-1422 (RLA)**                                              **Page 9**

requisites must be present: "(1) a claim which is unliquidated or concerning which a *bona fide* controversy exists; (2) an offer of payment by the debtor; and (3) an acceptance of the offer of payment by the creditor." H.R. Elec., Inc. v. Rodriguez, 114 D.P.R. 236, 240 (1983) (citing Lopez v. South P.R. Sugar Co., 62 D.P.R. 238, 243 (1943)). *See also*, Alvarez Diaz, 787 F. Supp. at 260. The payment offer must be accompanied by acts or declarations which clearly denote that the offer made represents full, complete, and final payment of the existing debt. H.R. Elec., 114 D.P.R. at 242. Similarly, the creditor's conduct must undoubtedly indicate that he has accepted the offer. *Id*. at 244.

We find none of these elements present in this action. There could be no *bona fide* controversy between the parties as to the sums allegedly due when the deficient contributions were paid inasmuch as none of the parties were even aware of these shortages at the time. Nor is there evidence of defendant making a payment offer with the intention of resolving the matter nor of defendants unequivocally accepting the same.

As to plaintiffs' alleged failure to follow the Joint Policy steps, as correctly pointed out by plaintiffs, this argument would in effect annul the audit process. It is axiomatic that the essence of an audit is precisely to determine whether or not the correct contractual amounts have been paid. Both the plan documents and ERISA authorize auditing defendant's employment records. *See*, Central

States, Southeast and Soutwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 449, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (contractual provisions support right to audit and such auditing is consistent with ERISA's basic policies); New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc., 92 F.3d 127 (2nd Cir. 1996) ("audit may be conducted by the trustees of the Fund pursuant to their fiduciary duties under the Trust Agreement and the common law of trusts as incorporated in ERISA.")

In this case, the right to conduct an audit is specifically included in the two Funds' Amended and Restated Trust Agreements. Both of these documents have identical wording in their respective Article VII Section 7 which reads:

> The Board of Trustees shall have the authority to retain an accountant or accounting firm to perform payroll audits of the Employers to determine whether or not the correct amount of contributions were made.

Condado Plaza may not rely on the Funds' alleged failure to send timely invoices for its refusal to pay inasmuch as defendant's obligation to make these contributions stems from the CBA. Further, the computation as to the correct amounts due is based on information under its control.

Defendant also disputes particular amounts identified in the Audit allegedly owed to the Fund for certain employees arguing that no services were rendered to them. However, pursuant to Article XIV

**CIVIL NO. 06-1422 (RLA)**                                                         **Page 11**

Section 2 of the CBA, contributions must be made for every employee who has worked for 90 days regardless of whether or not they received services through the Health and Welfare Fund in any given month.

## CONCLUSION

Based on the foregoing, we find that defendant has failed to demonstrate that a genuine issue exists which precludes the relief as requested by plaintiffs.

Therefore, Plaintiffs' Motion for Summary Judgment (docket No. **28**) is **GRANTED**.[3] Accordingly,

- Condado Plaza is indebted to the **Pension Fund** in the amount of **$8,126.44**, plus reasonable attorneys' fees and costs.
- Condado Plaza is indebted to the **Health Fund** in the amount of **$45,425.63**, plus reasonable attorneys' fees and costs.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 27th day of February, 2008.

                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                    United States District Judge

---

[3] See Defendant's Opposition (docket No. **34**) and Plaintiffs' Reply (docket No. **37**).